JORDAN *versus* SCHOOL DISTRICT No. 3, IN LISBON & WEBSTER.

School district meetings must be *notified*, in accordance with the provision of § 5, art. 2, c. 193, of the laws of 1850, or in accordance with the vote of the district, at a legal meeting, under § 7, of the same article, to make their proceedings binding upon the corporation.

Whether, after a school district, at a legal meeting, authorizes future meetings to be called under a notice differing from that required by § 5 ; a legal meeting might not be called in accordance with § 5, *quere.*

A school district, at a legal meeting, may ratify and confirm proceedings of previous meetings which were not strictly legal.

A committee, chosen at an illegal meeting, cannot, by their acts in superintending the building of a school-house, make the district liable to pay for its erection.

Where there is no legal contract on the part of a school district to build a school-house, nor any acceptance of the house, the building of such an house within the limits of the district, imposes no legal obligation upon its members to pay for it.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J. presiding.

ASSUMPSIT to recover the price agreed for building a school-house.

It appeared by the record of a meeting held by the district on April 19, 1851, that one article was " to see in what manner notice of future meetings shall be given," under which they voted, that " the clerk call future meetings upon receiving a request of the agent or of any three legal voters of said district."

The plaintiff introduced the following from the district records : —

" Notice.

" To the legal voters of school district No. 3, in the towns of Lisbon and Webster, — Greeting.

" Pursuant to a written application to me made by the agent of said district No. 3, you are hereby notified and warned to meet at the school-house in said district on the 25th day of October, instant, at 3 o'clock in the afternoon, then and there to act on the following articles, viz : —

" 1. To choose a moderator to preside at said meeting.

" 2. To see if the district will agree upon a place to set the school-house.

" 3. To see if the district will agree to build a school-house.

" 4. To see if the district will agree to raise money to build a school-house.

" 5. To see how much money the district will raise to build a school-house.

" 6. To see what method the district will take to build a school-house.

" 7. To act on any other business that may come before said meeting. " Samuel Cushman, Agent.

"Dated at Webster this 15th day of October, 1851.

" A true copy, attest, David Larrabee, Clerk."

"I hereby certify, that I have posted up a copy of the within notice at two public places within said district, to wit, one at the school-house within said district, and one at the corner of the Cathance road, being a public place within said district, on the 16th day of October, it being seven days before the day appointed for the said meeting.

"David Larrabee, Clerk.

"Webster, Oct. 16, 1851."

The records of that meeting show the choice of a moderator who was duly sworn, and

" 2. Voted to pay David Larrabee $12,00, for land to set a school-house at the corner of the Cathance road.

" 3. To build a school-house.

" 4. To raise money to build a school-house.

" 5. To adjourn this article.

" 6. To dismiss this article.

" 7. To choose a committee; chose Saml. Cushman, Chas. Hinkley and Levi G. Hanson for building committee; clerk to notify the committee.

" 8. Voted to adjourn this meeting until next Saturday."

At the adjourned meeting, it appeared, that the 2d, 6th and 7th votes were reconsidered, and a committee was chosen to locate.

"Voted that Saml. Cushman, Kingsbery Dunnell and Levi G. Hanson be that committee, and that the same be superintending building committee, and to bring in their doings at the next meeting, and it was adjourned."

At such adjourned meeting, the committee's plan was accepted; the building of the school-house set up to the lowest bidder; the time when it should be finished appointed; its location fixed, and the plaintiff was the lowest bidder.

The plaintiff also read the doings of a school meeting of April 26, 1852, to show a recognition by the district of their contract with the plaintiff, and of the fact that he was building a school-house at that time for the district. He also offered the various other records in the same book, to show that the mode of calling the meeting of Oct. 25, 1851, was the common one, and also to show that the district had been organized for many years.

(Neither this book of records, nor any copy of it was furnished with the case,) but was made a part of it.

The plaintiff offered to prove by parol, *that all the voters* in the district were present at the several meetings, in which action in relation to the school-house was taken by the district and *acted* and assented to the doings of the meetings; *that* he was present at the meeting when the school-house was bid off and actually bid it off and made a contract therefor with the whole district there assembled; *that* he built a school-house for the district, (of the description given in the plan of the committee spoken of in the record,) under the direction and supervision of Saml. Cushman, Kingsbery Dunnell and Levi G. Hanson, all voters in the district, and *acted* in the capacity of building committee, and that the house was finished by the time fixed in the record; *that* he built it upon the land of the district, and that the fact was well known to the officers and members of the district and not objected to by them; *that* it was built on the spot designated and dictated by the persons acting as building committee; *that* several voters of the district had stated and admitted, that he had contracted with the

district to build a school-house for $169, and that he *had* built such a one as was agreed upon for the district; also by the clerk, Larrabee; *that* he called and gave notice of the meeting of Oct. 25, 1851, by posting up in two public places in the district, the notice, herein before recited, and that it embraced all from the word "notice" to "clerk;" *that* he posted it as his own call of the meeting, and not that of the agent, that the call as posted was not signed by the agent, but inserted by the clerk to indicate that the *request* was by the agent.

All this testimony was rejected by the presiding Judge.

The Court thereupon considering that there was no legal testimony offered, to make out a case, ordered a nonsuit.

To all which rulings and order, the plaintiff excepted.

*Gould,* with whom was *Tallman,* for plaintiff.

1. The plaintiff built a school-house, under the direction of three members of the district; the work was carried on under the daily observation of the voters of the same district, and in accordance with their plan, and finished within the time stipulated. He was not a member of the district and had no control whatever over the manner of keeping their records, but had a right to presume they would be properly kept. The defendants, to escape from their contract, set up their own wrong, that the meeting where proceedings were had, under which the plaintiff acted, was illegal. There should be some insurmountable legal objections, before a party under such circumstances should escape from his liability.

2. The meeting of April 19, 1851, seems to be unobjectionable. They then agreed upon the mode of calling their future meetings. R. S., c. 193, art. 2, § 7. A fair construction of § 7, is to authorize the district to prescribe the *mode* of calling meetings; including the designation of the *person* who should post up the notices. *Moore* v. *Newfield,* 1 Greenl. 44, shows analogous action under a similar statute.

3. Objection is made to the legality of the meeting of October 25, 1851. It is not contended, that the proceedings

under the call were insufficient to authorize the plaintiff to recover, if the meeting was legally organized. The fair import and construction of the record calling that meeting shows that the whole document was not the agent's but the clerk's. He copied a part of the agent's application and adopted it as his own call, signing it himself. It may have been a little irregular, but it was *substantially* a warrant. This also appears to be his from the return, which is made evidence by law. If there was any informality about it, it was still a substantial compliance with his duty. It was *intelligible* to the district; it answered all the purposes of a warrant. *Soper* v. *School District in Livermore,* 28 Maine, 193.

4. While it may be true that the records are the only legal evidence of *what was done* at the district meeting, it was competent to show by parol in what *condition* the call of the meeting was *posted up.* When the notice was posted it either purported to be from the *agent* or *clerk.* If any *ambiguity* appears in the record in this respect, can there be any impropriety in explaining it by parol? *Williams* v. *School District in Lunenburgh,* 21 Pick. 75.

5. If all the voters in the district were present and unanimously agreed to waive any informality in the notice and to proceed to business, it was competent for them to do so. Angel & Ames on Corp. 391 and 394, and authorities there cited. The statute does not *imperatively* require a notice. It only provides a mode in which a meeting may be called; but if the meeting is assembled in fact, why may they not bind themselves, especially to a stranger, without resorting to the mode provided by statute? *Saxton* v. *Nimms & al.* 14 Mass. 315. In *Moore* v. *Newfield* the voters were not all present. *Ford* v. *Clough,* 8 Greenl. 334.

6. Under the count upon a *quantum meruit,* the plaintiff ought to recover, for he offered to show his labor under the direction of a building committee, *de facto.* If they were such committee, the irregularity of the notice for the meet-

ing at which they were chosen, is not open in this case. If the case cited from 21 Pick. 85, is good law, the plaintiff may recover, though he fail to prove his contract. If the *call* was irregular, the record is *not wholly void.* The acts of an officer *de facto* of a corporation, though irregularly chosen, are binding and valid, at least as between the corporation and *third* persons. Angel & Ames on Corp. (2d edition,) pp. 81, 82, 224 to 227, and authorities there cited.

*Gilbert,* for defendants.

RICE, J. — The powers of school districts, or corporations, are limited and defined by legislative enactments. These corporations can act only in such manner and upon such subjects as the law prescribes. Any acts, therefore, of the inhabitants residing within the territorial limits of a school district, upon matters not confided by the law to the jurisdiction of such corporations, or any proceedings in a manner not authorized by law, would be ineffectual to bind the district in its corporate capacity.

Sect. 5, art. 2, c. 193, statute of 1850, provides, that school district meetings, on the written application of three or more of the legal voters of such districts, respectively, stating the reasons and objects of the proposed meetings, may be called by the selectmen of the town containing such district, or by the school district agent or agents, if any have been appointed.

Sect. 7, of the same chapter and article, provides, that every school district, at any legal meeting thereof, may determine the manner in which notices of its future meetings shall be given.

The defendants at a meeting held on the 19th of April, 1851, voted to authorize the clerk to call future meetings, upon request of the agent, or any three legal voters of the district.

It is suggested that the fact that the district did thus determine the manner in which future meetings should be called, does not deprive the agent or the selectmen of the

right to act under the provisions of the fifth section. It may well be doubted whether the action of the district under the seventh section does wholly supersede all authority under the fifth. But whether this be so or not, does not affect this case, because the meeting under which the plaintiff claims, was not notified according to the provisions of either section, and is therefore alike invalid in either case. Nor is it material whether there were a larger or smaller number of the inhabitants present. The meeting must have been legally notified before it was in a condition to act. *Moore* v. *Newfield*, 4 Maine, 44.

The plaintiff read the doings of a school meeting of April 26, 1852, to show a recognition by the district of the contract with the plaintiff, and of the fact that the plaintiff was building a school-house for the district. It was competent for the district by its subsequent acts, to ratify and approve of former proceedings which were not strictly legal. *Fisher & al.* v. *Inhab. of School District No.* 17, *in Attleboro'*, 4 Cush. 494. But inasmuch as neither the record which was read, nor a copy thereof, has been put into the hands of the Court, we are unable to determine whether any thing was subsequently done, at a legal meeting of the district, having a tendency to approve or ratify the contract as claimed by the plaintiff.

School districts are required by law to keep a record of their proceedings by a sworn clerk. Such proceedings can therefore be proved only by the record, or a copy thereof, properly authenticated. The parol proof offered was consequently properly rejected.

The plaintiff does not show that any persons were authorized by the district, at a legal meeting, to act as a committee to superintend the building of a school-house for the district. The fact that the plaintiff did build a school-house within the limits of the district, with the knowledge of the inhabitants, under the direction and supervision of men, who, without authority, assumed to act as a committee for the district, would not bind the inhabitants in their corpor-

atc capacity, unless they have in that capacity ratified such action.

There being in this case no evidence of any legal contract on the part of the district, or any party authorized by it, and no evidence that the district have by any acts accepted the house built by the plaintiff, the nonsuit was properly ordered.                                   *Exceptions overruled.*

TENNEY, APPLETON and CUTTING, J. J., concurred.