# SWAMP-LAND RECLAMATION DIST. NO. 407 v. WILCOX.

## No. 11,782; August 31, 1887.

### 14 Pac. 843.

**Swamp Lands—Assessments—Order of Board of Supervisors— Alteration—Evidence.**—In an action by a swamp-land reclamation district to enforce the payment of a swamp-land assessment, plaintiff offered in evidence an order appearing in the "minute-book" of the board of supervisors, in which, by Political Code, sections 4029–4031, all orders of the board are required to be recorded; and it was conceded that, without the direction of the board, the order had been altered by B., who at the time of the entry, but not at the time of the alteration, was ex-officio clerk of the board. B. testified, against objection, that he made the alteration to correct what appeared to him, on examination, to be a clerical error of his deputy, now deceased, the then acting clerk of the board. The "rough minute-book," containing the original entry from which the record was made, and to which the altered record conformed, was also admitted against objection. Held, that it was error for the court to admit the order in evidence.

**Swamp Lands — Assessment — Record — Alteration—Parol Evidence.**—Held, further, that the order was a record which B. had no right to alter or amend, and that parol proof was inadmissible to correct or change the record.

**Swamp Land—Assessment Lists—Description.**—Under Political Code, section 3461, requiring certain assessment lists to contain "a description, by legal subdivisions, swamp-land surveys, or natural boundaries," a description, naming the adjoining proprietors on the respective boundaries, is sufficient.

**Swamp Land — Assessments and Benefits — Duty of Commissioners.**—Political Code, section 3456, provides that assessments for swamp-land improvements shall be proportionate to the resulting benefit, and section 3461 provides, among other requisites, that the list must contain "the amount of the charge assessed against each tract." The list in question conformed to the requirements of section 3461. Held, that the commissioners were not required to report that, in making the assessment, they had complied with section 3456, and that in the absence of evidence to the contrary, they must be presumed to have regularly performed their official duty.

**Swamp Land—Assessment List.**—In an Action to Enforce the Payment of a swamp-land assessment, it appeared that, in the assessment list, there was no dollar-mark before the figures opposite defendant's name, under the heading "Amount of charges assessed." In a number of assessments the dollar-mark preceded the figures under that heading, and in others the mark did not appear. Held, that the figures must be construed to represent dollars.

**Swamp Land—Oath of Commissioners.**—The Commissioners of Swamp-land Assessments were verbally sworn before viewing the land, but it did not appear that they subscribed their oath and filed it in the county clerk's office, as required of all "officers" by Political Code, sections 904, 909. Held, that whether the commissioners were or were not "officers," within the meaning of those sections, a failure of strict compliance with their requirements would not avoid official acts fully performed.

APPEAL from Superior Court, Sacramento County; T. B. McFarland, Judge.

W. H. Beatty, Add C. Hinkson and Freeman, Johnson & Bates for appellant; A. P. Catlin for respondent.

BELCHER, C. C.—This is an action to enforce payment of a swamp-land assessment. The plaintiff was organized as a swamp-land district in January, 1882, to reclaim certain swamp lands situate on Andrus island, in Sacramento county; and, as alleged in the complaint, the assessment sought to be recovered was thereafter regularly levied on land owned by the defendant within the district. In the court below judgment was entered in favor of the plaintiff, from which, and from an order denying a new trial, the defendant has appealed.

The validity of the assessment is assailed by the appellant upon several grounds, but they need not all be noticed.

In support of the averment that commissioners were appointed to view the lands of the district, and to assess upon them the proper charge for their reclamation, the plaintiff offered in evidence at the trial an order appearing in minutebook "K" of the records of the board of supervisors, which read as follows:

"Office of the Board of Supervisors,
"Friday, August 25, 1882.

"Swamp-land district No. 407. The report of the trustees of swamp-land district No. 407, was received and the following report adopted: 'Ordered that J. M. Upham, J. M. Stephenson, and John Miller, three competent and disinterested persons and residents of Sacramento county, be, and are hereby, appointed commissioners, who must, in the manner provided by law, view the land of said district and assess thereupon the proper assessment and charge for the reclamation of said land, to wit: The sum of $78,000, in the manner and at the cost surveyed, planned and estimated by J. C. Pierson, engineer of said district, and by the board of trustees filed this day with the clerk of this board.' "

The defendant objected to the entry being received in evidence upon the ground that when made it was an order appointing commissioners to view and assess a charge on lands in swamp-land district No. 341, and that it had since been altered and changed, and was therefore irrelevant and immaterial. And in this connection counsel offered to show that from August 25, 1882, until 1885, the record read as follows: "Swamp-land district No. 341. The report of the trustees of swamp-land district No. 341 was received and the following report adopted: 'Ordered that J. M. Upham, J. M. Stephenson and John Miller,' " etc. Then followed the balance of the order as above set out.

Thereupon the attorney for the plaintiff admitted in open court that on the seventeenth day of July, 1885, the day before the trial, Thomas H. Berkey, in his presence, changed the figures designating the number of the district from "341" to "407." It was then shown that Thomas H. Berkey was the county clerk of Sacramento county on the twenty-fifth day of August, 1882, but that his term of office had expired before he changed the record as above stated, and that he was then acting as a deputy county clerk; that the record of the pro-

ceedings of the board of supervisors, of which the entry in question was a part, was signed by the president of the board, but was not signed by Berkey or any of his deputies, and that the alteration was made by Berkey when the board of supervisors was not in session and without its direction or permission. Berkey was called as a witness and testified, against the objection of defendant, that he made the alteration as soon as his attention was called to what appeared to him, by a comparison of the records and examination of different pages of the record-book, to be a clerical error made by one Parnell, now deceased, who, in August, 1882, was his deputy, and as such was the acting clerk of the board of supervisors. A book was also introduced in evidence, against the objections of defendant, described by the witness, Berkey, as the book of original entry, and what he termed the ''rough minutes''—a book in which the clerk first entered the minutes of the proceedings of the board, and from which the record of its proceedings was made up. In that rough minute-book appeared the following entry under date of August 25, 1882: ''The board of swamp-land com., No. 407; report of trustees filed and ordered adopted; see order.'' Upon this showing the court overruled the objections of defendant, and admitted the order in evidence.

In so doing we think the court erred. The county clerk is ex-officio clerk of the board of supervisors, and as such must record all the proceedings of the board. And the board must cause to be kept a ''minute-book,'' in which must be recorded all orders and decisions made by them, and the daily proceedings had at all regular and special meetings: Pol. Code, secs. 4029–4031. The order in question was, therefore, a record which, it is evident, Berkey had no right to alter or amend, even though he had personal knowledge—as he did not have in this case—that it was erroneously entered: Dyer v. Brogan, 70 Cal. 136, 11 Pac. 589; Pacheco v. Beck, 52 Cal. 3; Wigginton v. Markley, 52 Cal. 411. Nor was parol proof admissible, in a collateral proceeding like this, to correct or change the record. This must be so on principle, and has been held in many similar cases. Thus, in Jordan v. School District, 38 Me. 170, it is said: ''School districts are required by law to keep a record of their proceedings by a sworn clerk. Such proceedings can therefore be proved only by the record,

or a copy thereof, properly authenticated. The parol proof offered was consequently properly rejected.'' So in Morrison v. City of Lawrence, 98 Mass. 221, it is said: ''Parol evidence was inadmissible to prove any acts or proceedings of the city council, or that the record of such proceedings as kept by the clerk was erroneous or defective'': See, also, Mayhew v. District of Gay Head, 13 Allen (Mass.), 134, and City of Logansport v. Crockett, 64 Ind. 319.

If the record was, in fact, erroneous in the particulars named, the plaintiff's remedy was an application to the board of supervisors, or some other direct proceedings, to have it corrected.

The defendant also objected to the assessment list, offered in evidence by the plaintiff, upon several grounds, and his objections were overruled. One ground of objection was that the land was not properly described. The code required the list to contain ''a description by legal subdivisions, swamp-land surveys, or natural boundaries of each tract assessed,'' and ''the number of acres in each tract.'' The land assessed to the defendant was described as a portion of two swamp-land surveys, ''bounded on the north by the lands of Mrs. R. F. Davis, on the east by the lands of L. C. Ruble, on the south by the lands of the Pacific Mutual Life Insurance Company, and on the west by Old river—number of acres, 100.'' This should be held, we think, to be a sufficient description, as otherwise it would seem impossible to describe the land so as to comply with the statute. Evidently, it could not have been described by legal subdivisions, nor, being a portion of two surveys, by swamp-land surveys. If, then, the words ''natural boundaries'' are to be construed as excluding all artificial boundaries, or boundaries made by man, it must follow that no sufficient description of the land could be made. We do not think such a result was intended or should be declared. In our opinion, any description which clearly identifies and marks out the land is sufficient.

Another ground of objection was that it did not appear from the face of the assessment list, or from any other evidence, that the assessment or charge was made in proportion to the whole expense, and to the benefits which would result from the works of reclamation, nor that the charge was estimated in gold and silver coin of the United States, nor in any kind of

money.   Section 3456 of the Political Code requires the commissioners to "view and assess upon the lands situated within the district a charge proportionate to the whole expense, and to the benefits which will result from such works, and estimate it in gold and silver coin of the United States."   And section 3461 provides what the list must contain as follows: "The list must contain: (1) A description by legal subdivisions, swampland surveys, or natural boundaries of each tract assessed. (2) The number of acres in each tract.   (3) The names of the owners of each tract, if known; and if unknown, that fact. (4) The amount of the charge assessed against each tract."

The list returned was signed by the supposed commissioners, and complied with the requirements of section 3461, and there is nothing to show that the assessment was not made in full compliance with section 3456.   The commissioners were not required to report that in making the assessment they had complied with the requirements of section 3456, and, if they had done so, their certificate to that effect would not have been even prima facie evidence of the fact: People v. Hagar, 49 Cal. 232.   They were, however, charged with an official duty, and, in the absence of all evidence to the contrary, must be presumed to have regularly performed that duty: Code Civ. Proc., sec. 1963, subd. 15.   It is true that there was no dollar-mark before the figures "4,746.45," placed opposite the name of defendant, under the heading, "Amount of charges assessed"; but the record shows that this was only one of a number of assessments contained in the list and that "in a number of cases there was a dollar-mark ($) preceding the figures in columns headed with the words 'Amount of charges assessed,' and in a number of other instances, as in this, the dollar-mark did not appear."   It is not shown when or in how many places the dollar-mark did appear, but if it was prefixed to some of the items in the column, then all the figures standing in the same column, and in the same relation to other similar items, must be construed to be dollars, without a repetition of the mark before each item: People v. Empire G. & S. M. Co., 33 Cal. 171.

Still another ground of objection was that it did not appear that Upham, Stephenson and Miller took, subscribed and filed their oath of office in the office of the county clerk, before they assessed the land and made the assessment list.   It did appear

that they were sworn verbally by a justice of the peace before they went out to view the land. It is not necessary to decide whether or not they were such officers as sections 904 and 909 of the Political Code refer to; for, if they were, their official acts, after being fully performed, were not rendered void by the fact that they had failed to comply strictly with the requirements of those sections.

After carefully examining the whole record, we find no error of which the defendant can complain, save the one first above noted; but for that error the judgment and order should be reversed and the cause remanded for a new trial.

We concur: Foote, C.; Hayne, C.

By the COURT.—For the reasons given in the foregoing opinion the judgment and order are reversed and cause remanded for a new trial.