## HUNNEMAN & CO. *v*. FIRE DISTRICT No. 1 IN JAMAICA.

*Pleading. Evidence. Corporation. Agency. Fire District.*

If a defendant corporation in a book account action would deny its alleged corporate existence the question should be raised by plea before judgment to account is rendered.

It appeared from the records of the defendant fire district, that at a certain meeting of the district, after choosing a moderator, it was voted to adjourn to another place in the district, where the district proceeded to transact other business. The defendant offered to prove by parol that at said meeting, the district met and voted to adjourn " without day " before transacting any other business, and thereupon the members of the meeting dispersed, and subsequently, on the same evening, and late, after many voters had retired, a few voters of the district got together and did the business recorded, and that the clerk neglected to record the first vote to adjourn. *Held*, that this evidence was properly rejected by the auditor.

One article in a warning of a meeting of the defendant fire district read as follows: " To see if the district will vote to purchase a fire engine, hooks and ladders and buckets, or any portion thereof, for protection against fire, and to raise money to defray the expense of the same, or for any other purpose." At the meeting it was voted, among other things, " to choose an agent to purchase whatever of fire apparatus the district may vote to buy;" " that $500. be appropriated to defray the expenses and preparation of suitable fire apparatus for the use of this fire district;" and it was further voted, " that the agent be instructed to expend a sum not to exceed $1,000. which shall include fire apparatus and reservoirs, and all things necessary for the protection of the district from fire." The plaintiffs had a copy of the proceedings of this meeting. *Held*, that the article in the warning was sufficiently definite and certain to support the votes.

*Held*, also, that the district had the right to make contracts by an agent for the purposes contemplated in said votes.

*Held*, further, that the agent appointed, in purchasing a fire engine and apparatus with it to the value of $750. did not exceed the authority conferred upon him, and his acts are binding upon the district. PECK, J., dissenting.

BOOK ACCOUNT. The plaintiffs' account was for a fire engine and certain other articles charged at $758. with interest from August 1st,

1862, to April 15th, 1863, $17.05, making in the whole $775.05, which was allowed by the auditor subject to the opinion of the court upon the following facts, which were proved:

On the 16th day of January, 1856, Benjamin Muzzy and I. P. Kendall, two of the selectmen of the town of Jamaica, pursuant to an application signed by twenty or more freeholders resident in the village of Jamaica and vicinity, proceeded to set out and establish a fire district in said town, to be called " Fire District No. 1, in Jamaica."

The board of selectmen consisted of three members. No evidence was offered tending to show that the other selectman acted in the matter of establishing said fire district. The selectmen so acting in the premises left their proceedings in the town clerk's office, to be there recorded, on the 19th of January, 1856. On the 16th of January, 1856, said Benjamin Muzzy and I. P. Kendall warned a meeting, as selectmen, of the legal voters of " Fire District No. 1, this day established," to meet at the town house, in said district, on the 25th day of January, 1856, at 6½ o'clock, P. M., to organize said district. The legal voters met pursuant to notice, and chose a moderator, clerk, and prudential committee.

The next meeting of the fire district was warned on the 29th of December, 1856, and holden on the 5th day of January, 1857, when, according to the records, after electing a moderator, it was voted to adjourn to the office of B. C. Knowlton in said district, where other business was transacted.

The defendant offered to prove by parol, that at the meeting last above mentioned, the district met and voted to adjourn " without day," before transacting any other business, and thereupon the members of the meeting dispersed, and subsequently on the same evening, and late, after many voters had retired to bed, a few voters of the district got together and did the business recorded, and that the clerk neglected to record the first vote to adjourn. This evidence was objected to by the plaintiffs, and excluded,—to which the defendants excepted. Other meetings were warned and holden from time to time. On the 30th day of December, 1861, a meeting was warned by Elliot E. Kellogg, clerk, to be holden on the first Monday in January, 1862. The third article in the warning is as follows: " To see if the district will vote to purchase a fire engine, hooks and lad-

4

ders, and buckets, or any portion thereof for protection against fire, and to raise money to defray the expense of the same, or for any other purpose." At this meeting the fire district, among other things, voted, " That a committee of three be appointed by the chair to enquire into and report the number of reservoirs and their location, necessary for the use of the village. Also the number of fire hooks and ladders necessary for the same purpose, and their cost, and also the cost of a suitable fire engine ; said committee to report at an adjourned meeting." After appointing a committee of three persons, it was voted to adjourn three weeks. The defendant fire district met pursuant to adjournment, and, after hearing the report of the committee, (which contained statements and estimates in detail, of the probable cost of a suitable fire engine, reservoirs, and other apparatus for extinguishing fires ;) among other things, voted—" To choose an agent to purchase whatever of fire apparatus the district may vote to buy." " Chose C. D. Read, said agent." Voted, " To appoint a committee to locate and build suitable reservoirs, also to be advisory with the agent." "B. Muzzy, J. E. Butler, and D. H. Rice were appointed said committee." It was further voted, " That $500. be appropriated to defray the expenses and preparation of suitable fire apparatus for the use of this fire district.

And it was also further voted, " That the agent be instructed to expend a sum not to exceed one thousand dollars, which shall include fire apparatus and reservoirs, and all things necessary for the protection of the district from fire." Read was present when chosen agent and accepted the office. After his appointment, and before the purchase hereinafter mentioned, Read visited Boston and conferred with the plaintiffs, who were manufacturers of and dealers in fire engines, &c., and ascertained from them the prices for which different engines, hose, &c., could be procured. Upon his return to Jamaica Read advised with John E. Butler about the kind of fire engine it was expedient to purchase, but did not advise with Benjamin Muzzy, who was out of town, nor did he advise with D. H. Rice, the other member of the " advisory committee," personally, but was informed by Mr. Butler that Rice approved of the purchase of the same kind of an engine as was afterwards obtained. While Read was in Boston he gave the plaintiffs a copy of the proceedings of the meeting

at which he was chosen agent, and on or about the 20th of June, 1862, he, as agent of the defendant, sent to the plaintiffs a written order·for the fire engine and other articles charged in the plaintiffs' account. And the plaintiffs soon after forwarded the same by railroad to Brattleboro depot, from which they were taken to Jamaica village, but by whom did not appear. At the meeting holden on the first Monday in January, 1862, a prudential committee of said fire district were chosen. Read did not advise with any of the members of the prudential committee about the purchase of the plaintiffs. In point of fact the committee were opposed to the purchase of this property of the plaintiffs, and when delivered at Jamaica village refused to accept of any portion of it, and never have accepted it. The prudential committee did not express any dissent to the purchase by Read until after it was completed, nor did they have any opportunity to do so ; yet Read supposed they were not in favor of it.

The listers of Jamaica never made any designation of any portion of the real estate, or other property subject to taxation to fire district No. 1, and no tax has ever been voted or assessed upon any grand list, to defray any expenses of the district.

The court at the April Term, 1863, BARRETT, J., presiding, accepted the report, and gave judgment *pro forma*, in favor of the plaintiffs for the sum found due by the auditor,—to which judgment the defendant excepted.

*A. Stoddard* and *E. E. Kellogg*, for the defendant.

*Butler & Wheeler*, for the plaintiffs.

KELLOGG, J. This is an action on book account, and it comes to this court upon exceptions taken by the defendant to the judgment of the county court in favor of the plaintiff on the auditor's report.

The first question insisted upon by the defendant is a denial of its legal existence as a corporation. No question in respect to the defendant's legal existence was raised by plea, and we think that, after a judgment to account, it is too late to make any objection to further proceedings in the suit on this ground. The auditor is not the proper tribunal to try the question whether there is such a corporation as the defendant in existence. His duties are to " hear, examine, and adjust the accounts between the parties ;" and, if the defendant would deny its alleged corporate existence, the question

should be raised by plea, before judgment to account is rendered. By submitting to a judgment to account, a defence to the suit on this ground should be considered as waived. If no such corporation is in existence, the defendant cannot be prejudiced by the taking of the account, nor by any judgment rendered thereon. In that case, the judgment would be a mere nullity, and ineffectual for any purpose ; and the plaintiffs would take it at their own risk, *quantum valeat.* In this view of the matter, we have not regarded the alleged irregularities in the organization of the fire district as being entitled to consideration. In the absence of any plea putting in issue the proper existence of the fire district as a corporation, we think that sufficient appears in the auditor's report to show that it is a corporation *de facto*, and to warrant proceedings against it as such.

We think that the auditor properly rejected the proof offered in respect to the adjournment of the meeting held on the 5th of January, 1857, because the effect of the testimony would be to add to and alter the record of the proceedings of that meeting, and the fact sought to be established by the testimony would, if proved, have no bearing on any question properly before him on the hearing.

The inhabitants of any fire district are authorized, at any legal meeting, to vote a tax on the grand list of the persons and property within the district for the purpose of protecting the property within the district from damage or destruction by fire. Acts of 1854, No. 7, § 6 ; (G. S., p. 122, § 171.) This authority to raise money by taxation is plenary and unrestricted. The purchase of engines, hose, and other fire apparatus is one of the chief objects sought to be attained in the organization of fire districts ; and the statute has left the powers of the district wholly unlimited in this respect, but it has provided that the prudential committee of the district shall not have power in any case to bind the district for the payment of any greater sum of money than shall have been already voted or collected. (Acts of 1860, No. 26, § 2.) This is a limitation merely on the discretionary power or authority of the prudential committee, but it is no limitation on the powers of the district as a corporation.

The section of the act of 1860 in relation to the duties of the prudential committee provides, among other things, that they shall have power to make all needful contracts, and expend the moneys of the

district in such manner, for the preservation of property in such district from damage or destruction by fire, as they shall deem necessary, and to draw orders on the treasury therefor. The purchase of a fire engine and the instruments or apparatus used with it was a transaction clearly within the scope of the corporate power conferred by the statute on fire districts, and the power to raise taxes for the purpose of protecting property in such districts from damage or destruction by fire implies the power to make such expenditures as are necessary and proper to effect that purpose, except in cases in which the exercise of this power is restricted or restrained by statute. The only restriction upon the mode in which a fire district may make contracts is contained in the Acts of 1857, No. 36, § 1, (G. S. p. 123, § 22,) and this, in terms, is applicable only to purchases of real and personal estate " necessary for the protection and preservation of the engine, hose, and other fire apparatus of the district," and " the apparatus for extinguishing fires," mentioned in that section, is referred to only for the purpose of limiting and defining the amount of *other* property which fire districts may take and hold. As to a person with whom it contracted a pecuniary liability arising on contract, a fire district, being not otherwise limited in respect to its power to enter into the contract, or to the persons through whom that power should be exerted, would stand on the same footing with a private corporation or an individual; and it might accordingly make a contract by an agent chosen by a vote of the district for that purpose. Angell & Ames on Corp., 22, 266.

We think that the third article in the warning for the meeting of the district which was held on the first Monday of January, 1862, was sufficiently definite and certain to support the votes of the district at that meeting in respect to procuring apparatus for extinguishing fires, and the appointment of an agent to purchase the same. *Dix et al.* v. *School District No. 2 in Wilmington*, 22 Vt. 309 ; *Moore* v. *Beattie*, 33 Vt. 219. The appointment of a committee of three persons to "be advisory with the agent" did not limit the power expressly conferred upon the agent, and we think that the terms of the vote under which that committee was appointed very strongly imply that the duties of this committee were intended to be, in respect to the agent, *advisory* only. The agent was appointed by the vote of

Hunneman et al. *v.* Fire District.

the district " to purchase whatever of fire apparatus the district may vote to buy ; and the district thereupon voted, (1.) " that $500. be appropriated to defray the expenses and preparation of suitable fire apparatus for the use of the district," and (2.) " that the agent be instructed to expend a sum not to exceed $1000., which shall include fire apparatus and reservoirs, and all things necessary for the protection of the district from fire." By these votes, the district conferred upon the agent an authority to pledge its credit which was not conferred by the statute on its prudential committee ; and this special authority could as properly be conferred on an agent appointed for that purpose as upon the prudential committee. If the district had voted to confer this authority upon its prudential committee, that committee would, *quoad hoc*, have been merely special agents of the district. The chief question in the case is whether the agent exceeded the authority which the district conferred upon him ; and this question is dependent wholly on the construction and interpretation of the votes of the district. It is not claimed that the contracts of the agent exceeded the limit specified in the last vote, and that vote clearly authorized an expenditure of a sum not exceeding one thousand dollars in the whole " for fire apparatus and reservoirs, and all things necessary for the protection of the district from fire." We think that this vote enlarged the authority conferred by the first vote, and that the agent, in ordering of the plaintiffs the fire engine and other articles charged in their account, acted within the power conferred upon him, and that his proceedings were binding on the district. The plaintiffs do not appear to have been informed that the prudential committee or any other persons in the district disapproved of the acts of the agent, and were justified in dealing with him as the agent of the district so long as he acted within the authority conferred upon him.

Judgment of the county court for the plaintiffs affirmed.

PECK, J., dissented, on the ground that the agent exceeded his authority, and that the exact extent of his authority was known to the plaintiffs at the time of giving them the order for the fire engine and the other articles which are charged in their account against the district.