BERTHA E. ELY ET AL. V. THE CITY OF GRAND
RAPIDS.

*Municipal corporations—Public improvements—Contract—Letting
to lowest bidder—Change in plans.*

> Section 15, tit. 6, of the charter of the city of Grand Rapids, which
> provides that the plans and specifications of the work, for the
> payment of which an assessment is ordered to be made, may
> be *changed*, and the work added to or diminished, at any time
> before the completion of the assessment roll therefor, does not
> refer to the contract for the work which, under the charter,
> must be awarded to the lowest bidder; and the changes covered
> by section 15, in so far as they can be held to authorize any
> change in the contract, are limited to the work provided for
> in that instrument. *McBrian v. City of Grand Rapids,* 56
> Mich. 95.

Appeal from superior court of Grand Rapids. (Burlin-
game, J.) Argued December 5, 1890. Decided December
24, 1890.

Bill to restrain the collection of a special assessment
for street improvement purposes. Complainants appeal
from a decree dismissing their bill. Reversed, and decree
entered in this Court as prayed. The facts are stated in
the opinion.

*Eggleston & McBride,* for complainants.

*J. W. Ransom ( W. W. Taylor,* of counsel), for defend-
ant.

[Briefs of counsel are confined to a discussion of the
propositions stated in the opinion, no authorities being
cited.—REPORTER.]

GRANT, J. The charter of the city of Grand Rapids
contains the following provisions:

1. "When the common council of said city decide that the construction of any public work in said city is a necessary public improvement, the board of public works shall determine as to the particular kind and quantity of materials to be used therefor, and estimate the probable cost and expense of such work, and of the material to be used, in detail, and cause to be prepared, so far as necessary, plans and specifications for such work, and report their estimate to the common council as a basis for assessing, or otherwise raising, according to law, the funds necessary to enable the board to go forward and complete such work."

2. "The work shall be done under the direction and supervision of the board of public works, and upon contracts and under plans and specifications to be prepared by the city surveyor, and approved by such board."

3. "The board of public works shall advertise for proposals to execute the work, and for materials, according to plans and specifications adopted by the board, and may contract with the lowest bidder."

On June 20, 1887, the common council adopted a resolution requesting the board of public works to establish the grade line of Curtis street, and furnish the council with an estimate of the cost of grading, graveling, and paving the gutters of the same, the same being a necessary public improvement. All the subsequent proceedings, including the petition by the property-owners, the estimate, the letting of the contract, and the first assessment to cover the expense, are admitted to have been regular. The estimate submitted to the council by the board of public works was $2,920. Upon this report, an assessment was made by the council, which was satisfactory to the parties interested. Of the bids made the lowest was $2,792, and for that sum the contract was let. In the estimate upon which these bids were made was the item: "Stone paving, 159 square yards." There was. no item for "paving gutters," either in the estimate, specifications, or contract, and after the work had progressed somewhat

84 MICH—22.

it was discovered that, while the improvement provided for in the original resolution contemplated and required the gutters to be paved, no provision was made therefor in the contract and specifications annexed thereto. Upon making this discovery, the board instructed the engineer to see the contractor, and obtain from him a proposition to pave the gutters. He offered to do it for the same price per yard for which he had contracted to do the 159 square yards of paving. The engineer reported this to the board, with his estimate of the number of yards of paving, making it 2,135 yards instead of 159 yards, as in the original contract. This would leave 1,976 square yards of gutter paving, which, at 40 cents per yard, amounts to $790.40. This was approved by the board, and certified to the council. The council thereupon rescinded its former resolution and order providing for the assessment, set aside the assessment roll, and adopted a new resolution and order for assessment, increasing the assessment from $2,920 to $3,970. This new contract was not open to competitive bids. The defendant was proceeding to collect these assessments by sale of the complainants' lands when they filed the bill in this cause to enjoin the sale. Upon the hearing the bill was dismissed.

The sole question in the case is, was the action of the board of public works in letting the contract for the pavement of the gutters without advertising for bids legal? The action is defended upon the ground that it was extra work, within the meaning of the original contract and the charter. The contract reserved to the defendant " the right to change any portion of the work from time to time, and to make all necessary additions thereto or deductions therefrom." Section 15, tit. 6, of the charter provides that the plans and specifications of the work, for the payment of which an assessment is

ordered to be made, may be changed, and the work may be added to or diminished, at any time before the completion of the assessment roll therefor, but not afterwards; and, if it shall appear that a greater sum of money has been expended in the completion of such improvement than was estimated, the common council may direct the assessment of the same on the owners and occupants of houses and lands benefitted by the improvements. This section does not refer to the contract for the work which, under the charter provision above given, must be awarded to the lowest bidder. The estimate and not the contract is made the basis for the assessment. If the work costs less than the estimate and the amount assessed, the charter provides the distribution of the balance among the property-owners who were assessed. If it costs more, a new assessment may be made. It is true that the paving of the gutters was within the scope of the improvement, but this did not confer upon the defendant the right to dispense with the charter requirement for competitive bids. The whole improvement required a certain number of cubic yards of excavation and embankment, also road gravel, screened gravel, top dressing, and a certain number of thousand feet of timber, and these were stated in the estimates. If the contract had been for making the excavations, which included only about one-third of the cost in the original contract, would it be contended that the defendant could let private contracts for the balance of the work upon the theory that it was within the scope of the improvement? The result would be a practical annulment of the provision for competitive bids. Under this theory a contract to grade might be extended into a contract to pave; a contract to pave with stone into a contract to pave with wood or asphalt at a greatly increased cost; a contract for any

distinct part of a public improvement into one for the whole. In *Brevoort v. Detroit*, 24 Mich. 322, the bid and contract were for paving about one-half the distance, or "farther, if ordered." It was held that the whole work was covered by the original bid, although the council ordered the balance of the work to be done. The changes covered by the above section of the charter, in so far as they can be held to authorize any change in the contract, are limited to the work provided for in that instrument. They cannot include distinct work not therein mentioned nor contracted for. It is of no consequence that a part of the public improvement is omitted from the estimate and contract by mistake. The result is the same as if it were intentionally done. This work of paving the gutters was entirely outside the contract. The private contract for the performance of the same was without authority and void. *McBrian v. City of Grand Rapids*, 56 Mich. 95. It is proper to add that there is no evidence of bad faith or improper motives on the part of the city authorities and the contractor.

The decree of the court below must be reversed, with the costs of both courts, and a decree entered here restraining the collection of the amount so held to be illegally assessed.

The other Justices concurred.