American Mexican Refining Company, Appellee, v. R. E. Wetzel, Appellant.

Gen. No. 8,507.

Opinion filed November 4, 1931.
Rehearing denied and opinion modified January 7, 1932.

RALPH W. ADAMS and PROVINE & WILLIAMS, for appellant.

HERSHEY & VOGELSANG, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This suit is brought by appellee to recover the value of 10 shipments of oil, amounting to about 100,000 gallons, commencing on August 6, 1927, and extending to September 15, 1927. The declaration consists of the common counts and a special count in which a special contract is set out charging that on February 25, 1927, Orval Osborn, then sole commissioner of highways of the town of Prairieton, county of Christian and State of Illinois, acting as agent for said town, entered into a written agreement with J. W. Debrun & Son of Assumption, Illinois, as follows: That J. W. Debrun & Son, party of the first part, has sold to Orval Osborn, commissioner as aforesaid, party of the second part, 10 tank cars of approximately 100,000 gallons of road oil, specifications as follows: "E-3 or E-4"; shipments to be made as near as possible on instructions of party of the second part; all shipments to be made from May 1 to November 1, 1927, price to be $.0547 per gallon f. o. b. Stonington, Moweaqua and Radford; the contract provides for delivered price, the price being based on a freight rate of $.27 per cwt. from refinery at Group 3 and if an increased or decreased freight rate is in effect at time of shipment the price to vary accordingly. The contract is dated February 25, 1927, and it was charged that on that date and on April 19, 1927, there was sufficient money in the hands of the treasurer of the commissioner of highways of the township of Prairieton not otherwise appropriated and of the taxes levied for the township of Prairieton for road purposes in September, 1926, and of taxes levied for road purposes pursuant to the special election with which to pay the amounts due or to become due to J. W. Debrun & Son according to the terms of the aforesaid contract.

It was further charged that prior to the execution of the contract on August 3, 1925, a special tax was

levied at an election held in the township of Prairieton to authorize a special annual tax to be levied of $.66 2/3 on each one-hundred-dollar valuation, as aforesaid, for a period of five years for the purpose of improving, maintaining and repairing earth roads by dragging, grading and oiling for the years 1925 to 1929 inclusive, which tax was certified to the county clerk of Christian county, Illinois, and by the clerk extended on the tax books of the county among other years for 1927, 1928 and 1929.

The contract contained this further clause: "Assignability: This contract is not assignable by the purchaser or seller except with the written consent of the other." Nevertheless, the special count charges: "That on May 4, 1927, the plaintiff for valuable consideration, received an assignment of the aforesaid contract from J. W. Debrun thereby receiving all of the interest of J. W. Debrun & Son in the oil sales contract above referred to and in compliance with the terms of the contract, the plaintiff did deliver to Orval Osborn as sole commissioner of highways of the township of Prairieton, the road oil in the contract specified, at the designation therein directed as requested by the said Orval Osborn, that is to say, it did deliver to and Orval Osborn did accept on the following dates, various amounts of road oil as follows:"

The cause was tried before the court, without jury, various proofs were submitted and there was a judgment for appellee in the sum of $3,962.05, which included interest upon the items of various deliveries from the date of delivery to the date of judgment.

Appellant has brought the record to this court by appeal for review.

No legal proofs were offered at any time as to the original contract or the submission for bids upon oil or any other substance, for which this claim is made. John W. Debrun, Jr., testified orally and identified as "Exhibit A" an original sales contract made by

J. W. Debrun & Son with the commissioner of highways of Prairieton township, and stated that the assignment to appellee was first made verbally, but was later confirmed by letter and a carbon copy of a letter from appellee to J. W. Debrun & Son was produced and appeared in the record as "Exhibit B." No record of the highway commissioner's office was offered or shown in regard to the contract, although Orval Osborn, who was commissioner when the contract was made and when the oil was delivered, testified orally that he signed the contract and that the oil was delivered and was spread upon the roads of Prairieton township. The only testimony as to "bids" was oral testimony by the witness Osborn, who states: "There had previously been a meeting of the highway commissioners of Christian county relative to the purchase of oil; that there had been no previous agreement relative to the purchase of oil; that bids were submitted at the meeting and J. W. Debrun & Son were the successful bidders." Just why the witness interjected "there had been no previous agreement as to oil" is not pointed out and just what is meant by the "successful bidder," is not explained. No record appears in the office of the highway commissioner as to any of this transaction and it would therefore appear to be void. (*People ex rel. Greenwood v. Board of Sup'rs Madison County*, 125 Ill. 334; *Village of Bellwood v. Galt*, 321 Ill. 504, 508; *People v. Finley*, 97 Ill. App. 214, 216.)

In *People v. Finley, supra,* the court held: "All townships in counties under township organization, are corporations. Hurd's R. S. 1899, Chap. 139, Sec. 38. And commissioners of highways are *quasi* corporations. *People v. Madison County*, 125 Ill. 334. The corporate acts of the town are required to be recorded by the clerk. Secs. 112 and 113 of said chapter.

"The corporate acts of the highway commissioners are likewise required to be recorded. Sec. 10 of same chapter. Under these provisions all corporate acts, whether of townships or of highways commissioners, are provable by record evidence only. *People v. Madison County, supra.*"

In *People ex rel. Greenwood v. Board of Sup'rs Madison County,* the court said:

"The principles announced seem to be well supported by authority. Where the law requires records to be kept, they are the only lawful evidence of the action to which they refer, and such record cannot be contradicted or supplemented by parol. The whole policy of the law would be defeated if they could rest partly in writing and partly in parol. *Stevenson v. Bay City,* 26 Mich. 44; *Hall v. People,* 21 id. 456; *Morrison v. City of Lawrence,* 98 Mass. 219; *Hanneman v. Fire District,* 37 Vt. 40; *Mayhew v. District of Gay Head,* 13 Allen 129. So where county commissioners and township trustees were required by law to keep a true record of their proceedings, it was held that they could 'only speak by their record' when legally assembled. (*Commissioners of Fayette County v. Chitwood,* 8 Ind. 504.) And where school districts are required by law to keep an account of their proceedings by a sworn clerk, such proceedings can only be proved by the record. Offered parol proof was rejected. (*Jordan v. School District,* 38 Maine 164.)"

In *Village of Bellwood v. Galt, supra,* the court held: "When a record of its proceedings is required to be kept the record is the only lawful evidence of its action, and it cannot be contradicted or added to by parol. *People v. Madison County,* 125 Ill. 334; *People v. Smith,* 149 id. 549; *People v. Carr,* 231 id. 502; *People v. Warren,* id. 518; *Southworth v. Board of Education,* 238 id. 190; *City of Belleville v. Miller,* 257

id. 244; *People v. Toledo, St. Louis and Western Railroad Co.,* 270 id. 472; *People v. Hartquist,* 311 id. 127."

Further it is a principle of law that a party has a right to select with whom he will contract; he cannot have substituted party thrust upon him without his consent. (*Rodhouse v. Chicago & Alton Ry. Co.,* 219 Ill. 596; *Chicago & Alton R. Co. v. Chicago, V. & W. Coal Co.,* 79 Ill. 121; *Barker v. Keown,* 67 Ill. App. 433.) No attempt was made to show that appellant was even consulted about the assignment of the pretended contract. There is no competent evidence in this record tending to show that appellant ever entered into any contract with appellee for oil or any other goods. But appellee insists it is entitled to recover the value of the oil which appellant received and for which it impliedly promised to pay. Under this phase of the case appellee seeks to recover upon 10 different items of sales and deliveries, at different dates, each item and sale amounting to about $500. It appears from the declaration and proofs that at a regular election held in Prairieton township in 1925, under subdivision VIII of chapter 121 of Cahill's Revised Statutes, ¶ 117, entitled "Gravel, Rock and Macadam—Hard Roads" the electors of that township had by a majority determined to levy a special tax of 66 2/3 cents upon each $100 of assessed value of property in said town for a period of five years, for the purpose of improving, maintaining and repairing certain earth roads by dragging, grading and oiling the same. Under this act the roads to be improved must be pointed out and described (*People v. Toledo, P. & W. Ry. Co.,* 248 Ill. 105, 112) and the tax collected "shall be known and kept as the permanent road fund." ' Cahill's St. ch. 121, ¶ 123; section 122, ch. 121, Smith-Hurd's Rev. Stat. 1929. Whether this becomes a town fund and charge under Cahill's St. ch. 139, ¶ 124; subsection

three of sec. 124, ch. 139, Smith-Hurd's Rev. Stat. 1929, as follows:

"The following shall be deemed town charges:

. . .

"3. The moneys authorized to be raised by the vote of a town meeting for any town purposes,"—we are not called upon in this case to decide. Section 115 of the act, Cahill's St. ch. 121, ¶ 124, provides that when any township shall, by vote, have determined to levy a special tax for hard roads, as set out, the county superintendent of highways shall at once survey the route of the road thus to be improved and prepare suitable maps, plans and specifications and estimates of the cost of the proposed improvement and file copies with the town clerk, the commissioner of highways and the State road department. Section 116 of the same chapter, Cahill's St. ch. 121, ¶ 125, provides: "When the plans and specifications are completed, the commissioners shall advertise for sealed bids for said work, by publishing a notice thereof for at least three weeks in some newspaper published in said township or road district. If there is no newspaper published therein, then in the newspaper published nearest said township or road district, and also by posting notices in at least ten of the most public places in said town or road district.

"But, if it has been voted to improve, maintain or repair earth roads by draining, grading, dragging or oil-treating, the county superintendent of highways may, in his discretion, direct the highway commissioner of the town or road district in which this work is to be done, to do the work according to the plans and specifications, without any advertisement for bids or public letting. (As amended by act approved June 24, 1921. L. 1921, p. 780.)"

Nowhere in this record is it shown that there was any notice given asking for bids in connection with

this work, nor did the county superintendent of highways, at any time, direct the commissioner of highways to do the work or purchase the oil in any manner, according to plans and specifications or otherwise. No plans or specifications are shown and no action on the part of the county superintendent is shown. The declaration charges that the county superintendent of highways approved the Debrun contract, but it does not so appear in the record. No such proof was offered. It is axiomatic that an implied promise to pay cannot be based upon such an open and flagrant violation of the law when a municipal corporation is involved, and in connection with the expenditure of public funds. *McChesney v. People,* 200 Ill. 146, 151.

On October 22, 1927, the witness Osborn, who was then highway commissioner, gave appellee an order upon the treasurer of the commissioners for the sum of $3,457.80 "in the hands of said treasurer, not otherwise appropriated for oil." This order is marked "due April 15th, 1928. Int. 6 per cent." This was the total amount of the ten purchases, less the freight which had apparently been paid and deducted. This order is drawn upon the general fund and was signed by Orval Osborn, commissioner. Osborn testified he did not know how much was unpaid on the oil October 22, 1927; that the oil when shipped was billed to Prairieton township. The supervisor, treasurer of the fund when the suit was tried testified he had been treasurer of the fund since 1929; that no moneys came into his hands from the special tax fund; that he has had none of the special tax funds; that apparently the moneys were paid out on old orders and new orders issued and carried along; that the town has been on a cash basis since the spring of 1929, but there are still some old claims, none as large as this claim, yet to be paid. The witness further testified that none of the old warrants paid were turned over by the former

treasurer and he could not tell much about what the payments were for. The treasurer's record book of receipts and expenditures from 1925 to October, 1927, was offered in evidence and the entire fund appeared to have been paid out by warrants. No attempt was made to show what these warrants were for. From the whole testimony it was apparent that there was a system of warrants being carried, drawing interest, and that the larger items were for taking up old warrants that had been drawing interest. There were quite large items paid to the Debruns for spreading the oil. No one seemed to know very much about how the system was managed and appellee did not inquire.

This suit was started on February 20, 1930, for oil sold in the summer of 1927 and for which a warrant was issued October 22, 1927, the warrant to become due April 15, 1928. The five years of tax levies have run and expired. The moneys were all expended, presumably upon hard roads, long before appellee commenced to realize that he had an interest in the fund, and commenced this suit. The property owners have performed their full duty in having paid the tax. The legislature was wise and just in requiring this tax to be segregated into a separate fund and into a permanent fund especially devoted to the improvement of specified roads, and to be kept separate and apart from all other funds so that appellee, if it had exercised caution and its dealings with the township officials had been legal and lawful, would have received payment upon its bills promptly. The law especially guards trust funds of this nature, not only for the benefit of those entitled to receive them, but to protect the taxpayer who may be called upon to replace them. *Miller v. Hale,* 308 Ill. 275, 281.

Appellee is not entitled to a judgment against the township or against the commissioner of highways upon this record, and is entitled to participate only in

the permanent fund as levied to the extent that it has not been legally and lawfully expended. (*Eames v. Doris*, 102 Ill. 350, 353; *Queenan v. Palmer*, 117 Ill. 619, 628; *Tunesma v. Schuttler*, 114 Ill. 156, 165; *Golden v. Cervenka*, 278 Ill. 409, 435; *Golden v. Ellwood*, 299 Ill. 73; Pomeroy Equity Jur. Third Ed. Vol. 3, secs. 1280 to 1284.) No attempt has been made in this suit to inquire into that question and this may not be the proper form of action to successfully make such inquiry. In numerous cases cited (*Brown v. Ellis*, 219 Ill. App. 543), it is held: "All that such authorities hold is that a town cannot go in debt except to the extent that it may anticipate the collection of a levy already made and that a debt, illegal because there were no taxes levied with which to pay it when it was contracted, cannot be collected out of revenues later acquired." Tax levies are shown only for the years 1925 and 1926 and the treasurer's record shows the disbursement of all these funds in which J. W. Debrun participated at numerous times and without further proof we must presume that all disbursements made were legal and lawful and of prior validity. For this reason and the other reasons set forth in this opinion, the judgment of the circuit court of Christian county is reversed.

*Reversed.*

Upon petition for rehearing and the citation of the case of *Euziere v. Highway Commissioner of Town of Rockville*, 346 Ill. 131, it is sufficient to add that the *Euziere* case merely defines a rule of pleading and does not, in any manner, change the law of this State, as to highway commissioners and has no bearing upon this case.

*Petition denied.*