(No. 23173.—

ALLEN GREEN *et al.* Appellees, *vs.* RALPH H. MAIL, County Treasurer, *et al.*—(THE MERCHANTS NATIONAL BANK OF TERRE HAUTE, Appellant.)

*Opinion filed February 14, 1936.*

Cooper, Royse, Gambill & Crawford, and Gillespie, Burke & Gillespie, (S. D. Royse, George B. Gillespie, Edmund Burke, and Louis F. Gillespie, of counsel,) for appellant.

P. J. Kolb, and Walter F. Kolb, (H. N. Quigley, and S. W. Baxter, of counsel,) for appellees.

Mr. Justice Wilson delivered the opinion of the court:

This cause was previously reviewed by this court upon a writ of error, sued out by the appellees herein. (*Green* v. *Hutsonville Township High School District,* 356 Ill. 216.) A bill was filed by certain tax-payers against Hutsonville Township High School District No. 201 in Crawford county, the members of the board of education thereof, the county clerk and county treasurer of Crawford county, to restrain the extension and collection of taxes for the payment of bonds and interest purporting to be obligations of the township high school district. General and separate special demurrers were interposed by the parties named as

defendants. The complainants elected to abide by their bill. The chancellor sustained the demurrers and entered a decree dismissing the bill. This court reversed the decree and remanded the cause with directions to overrule the demurrers and for further proceedings in consonance with the opinion. Upon remandment of the cause a joint and several answer of the school district and the former president and members of the board of education, the separate answer of the county clerk, one by the county treasurer and one by the Merchants National Bank were filed, and replications were filed to the answers. Evidence was heard and a decree entered finding that the bonds in question were void and the extension and collection of taxes for the purpose of paying the bonds and the interest thereon was enjoined. From that decree this appeal was prosecuted.

As stated in the opinion on the previous review by this court the citizens of the high school district decided to build a school house at a cost of not to exceed $40,000. The voters approved a proposition to borrow $29,700, which was the limit of indebtedness which the district might incur, based upon the assessed value of the taxable property within the district, as provided by section 12 of article 9 of the constitution. Without other authority than the vote of the legal voters to build the school house and the authorization by the voters to borrow to the legal limit for the district, the board of education entered into contracts for the construction of a school building at a total cost in excess of $74,000. After the contracts were awarded it became possible, by virtue of an amendment of the law relative to assessed valuations of property, to borrow an additional $15,000 within the constitutional limitation of five per cent of the assessed value of the taxable property in the district. At another election $15,000 additional in bonds was authorized by the voters of the district and a total of $44,700 in bonds was issued. Out of this sum $3000 was paid for a school site and $1000 was paid for attorney's fees. The

total indebtedness of the district so incurred was $77,347.50, or $32,647.50 in excess of the amount realized from the sale of bonds, and approximately the same amount in excess of the constitutional limitation of the district's right to become indebted.

After the school building was completed certain persons and firms who had supplied material and labor in the construction thereof filed suits and obtained judgments in 1921 to an aggregate amount of $19,741.85, the school district consenting that such judgments should be entered. The original bond issue of $44,700 matured and was all paid by July, 1931. In August thereafter, a special election was held to vote on a proposition to authorize the district to issue its bonds in the sum of $34,000 for the purpose of paying the judgments, with their accumulations of interest and costs. The proposition carried and the bonds were issued and sold. The Terre Haute Trust Company became the owner of some of the bonds but subsequently the Merchants National Bank of Terre Haute, Indiana, became the owner of practically all of the bonds, and it filed an intervening petition in the circuit court of Crawford county reciting that fact and became a party to the suit, and the Terre Haute Trust Company filed an answer averring that since the institution of the suit it had transferred all its right, title and interest in the bonds to the Merchants National Bank, and disclaimed any further interest in the cause.

The answer of the Merchants National Bank, the only appellant herein, averred many of the facts heretofore stated, and assigned as a reason for the construction of the school building at a cost in excess of the amount for which the school district might become indebted, that a smaller building than the one constructed would be inadequate to furnish the necessary facilities for the competent instruction of the pupils and would endanger their health and result in an inexcusable waste of funds, and that in view of the emergency the board of education of the district, in good

faith, believed that it was not limited, by law, to the construction of an inadequate school building. The answer stated, in part, what was done in the construction of the building, the institution of the suits by those supplying material and labor, recited that the suits were brought upon the advice of counsel and that there was no collusion with officers, agents or attorneys of the district in filing the suits; averred that each of the plaintiffs was entitled to recover judgments against the school district for the amounts respectively asserted to be due, for which the suits were brought; that the judgments have been entered of record in the circuit court of Crawford county and have been available to be seen at all times by the complainants and the taxpayers of the school district. There were averments concerning the assignments of the various judgments and that the Merchants National Bank was the owner of bonds of the school district of the par value of $29,000.

The answer further averred that none of the complainants or tax-payers of the district had objected to the validity of the bonds until the filing of the bill on February 16, 1933; that by reason of the complainants' standing by and permitting the defendant to purchase the bonds for a valuable consideration they had lost any right they might have to seek the aid of a court of equity; that township high school districts and boards of education thereof are the representatives of the tax-payers of such district, and judgments rendered against them in a case wherein the board of education appeared and the court had jurisdiction over the board and district and of the subject matter involved in the suit are binding upon the tax-payers of the district, and cannot be collaterally attacked by any tax-payer of the school district, and that the judgments mentioned in the bill constituted contracts which are protected from impairment by the constitutions of the State and United States.

Upon the hearing minutes of the various meetings of the board of education of the high school district contain-

ing resolutions and reports, and records of the clerk of the circuit court of Crawford county were introduced in evidence to show authorization of the acts on behalf of the district and other facts, which we have heretofore set out as being alleged in the pleadings, and they need not be further amplified. The judge who presided at the time the cases were heard and judgments obtained, in 1921, testified at the present hearing that in the disposition of those cases he was informed that the balances respectively due were on contracts for building a school house, but there was not presented to him any question of the constitutional limitation of the school district's indebtedness having been exceeded. Certain of the complainants testified that they did not learn of the judgments against the school district until about the time of the election to authorize the bond issue to pay for such judgments.

It is contended by counsel for the appellant that on the facts as presented by this record appellees were not entitled to invoke the jurisdiction of equity to defeat the payment of the judgments through the issuance of the bonds in question; that they have no right to maintain the suit in behalf of others than themselves; that they have a complete remedy at law, and that, even if otherwise they are properly in a court of equity, they are barred by *laches*. Counsel for appellees assert that certain of these questions are the same as were presented upon, and are settled by, the previous review by this court. They assert that they have the right to invoke the aid of equity, and that there was no *laches* in instituting the suit.

It was held in this case upon the previous review upon the facts stated in the bill and admitted by the demurrers, that the original indebtedness, which was later merged in the judgments, was void, and the consent judgments were also void, and the tax-payers were not concluded thereby. (*Green v. Hutsonville Township High School District, supra.*) No different situation in the above respect has been

presented by the answers than existed when the demurrers were interposed. The answer of appellant averred that the board of education, in good faith, believed that because of the alleged emergency arising out of the fact that a school building smaller than the one constructed would be inadequate for the district's needs, and that the pupils' health would be endangered and there would be a waste of funds by the expenditure of money for inadequate school facilities, the board was not limited by the law to an expenditure within the limitation mentioned. The supposed need of the school district was not justification for the creation of a debt beyond the limit prescribed by the constitution. (*Schnell* v. *City of Rock Island,* 232 Ill. 89; *City of Chicago* v. *Galpin,* 183 id. 399; *City of Chicago* v. *McDonald,* 176 id. 404; *Prince* v. *City of Quincy,* 128 id. 443; *Prince* v. *City of Quincy,* 105 id. 138; *City of Springfield* v. *Edwards,* 84 id. 626; *Green* v. *Hutsonville Township High School District, supra.*) Ignorance of the law is not excused in such manner. Every person is presumed to know the extent of the powers of a municipal corporation and is required to take notice of the limitations upon those powers. *Haas* v. *Commissioners of Lincoln Park,* 339 Ill. 491.

It is contended that the complainants (appellees) could not bring the suit on behalf of themselves and others. While the bill contains certain allegations with respect to the rights of tax-payers generally it does not purport to have been brought on behalf of others than the twenty-six complainants, and the prayer for relief is for injunction against the collection or attempted collection of taxes from the complainants only. One of the grounds for seeking the aid of equity was to avoid a multiplicity of suits. The number of complainants joining in the bill was sufficient to give a court of equity jurisdiction on that ground. (*Weininger* v. *Metropolitan Fire Ins. Co.* 359 Ill. 584; *Drainage Comrs.* v. *Kinney,* 233 id. 67.) Moreover, upon the suit of a single tax-payer to enjoin the extension or collection of a void

and illegal tax, the court may grant relief as to the entire tax. (*Knopf* v. *First Nat. Bank,* 173 Ill. 331; 1 High on Injunctions, (4th ed.) p. 547.) None of the answers averred as a defense that appellees had an adequate remedy at law. As that question was not presented to the trial court it cannot be urged in this court. *Waller* v. *Hildebrecht,* 295 Ill. 116; *Butler* v. *Miller,* 208 id. 231.

The contention that there was *laches* cannot be sustained. The original bill alleges, and the evidence shows, that no effort was made to collect any of the judgments until the bond issues aggregating $44,700 had matured and been paid, which was in 1931. This bill was filed in the early part of 1933. Several of the complainants testified that they had no knowledge of the judgments until about the time of the election in 1931 to issue bonds to pay the amounts thereof. The evidence shows that at the time the judgments were obtained it was with the collusion and consent of the officers of the high school district and without the court being informed as to the nature and character of the claims involved in the several suits. The averments of the answer of appellant disclose its knowledge of the fact that the judgments were for an indebtedness above the district's power to become indebted, or, at least, on the facts averred it was chargeable with such knowledge. *Laches* is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great and other circumstances causing prejudice to the adverse party, constitutes a bar in a court of equity. (*Brunotte* v. *DeWitt,* 360 Ill. 518.) Mere delay will not bar relief where an injured party is ignorant of fraud and files his claim within a reasonable time after learning of it. *Crimp* v. *First Union Trust and Savings Bank,* 352 Ill. 93.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERRICK, dissenting.