John Folkers et al., Appellees, v. Glenn D. Butzer et al. Andrew Hussemann et al., Appellants.

Gen. No. 9,250.

2

Opinion filed February 15, 1938.
Rehearing denied March 21, 1938.

FRANK ORTMAN, HUBERT H. EDWARDS, JOHN H. MC-
FADDEN, H. G. GREENEBAUM, A. H. FELLHEIMER and
CYRIL A. BURNS, all of Pontiac, for appellants.

BAKER, NIVEN & CRABTREE, of Pontiac, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the
court.

This was a suit by appellees, as taxpayers, to enjoin the payment of certain anticipation tax warrants.

Pursuant to ¶ 117, ch. 121, Cahill's Ill. St. 1933, a
special tax was voted by Waldo township for a period

of five years from 1930 to 1934, both inclusive, for the purpose of constructing and maintaining gravel roads in said township. It appears that following the election the highway commissioner filed with the town clerk and the county clerk a certificate of levy in the sum of 30 cents on each $100 assessed valuation of the taxable property in said town for the above years.

Nothing was done toward the construction of any road until in the spring of 1931, when it was decided to improve 14 miles of road in the township by grading, draining and graveling same. Following this, the commissioner entered into a contract with the Churchill Gravel Company to furnish the gravel and improve the roads selected, for the sum of $39,945.07. Upon completion of the work a cash payment was made to the contractor, which consisted of the money that had been collected up to that time from the special tax levy, and anticipation tax warrants were issued and delivered to him in payment of the balance due under the contract. These tax warrants were payable out of the funds to be derived from the special tax levy. In 1932 the township again paid to the contractor all of the money realized from the special tax and renewed the anticipation warrants. This was again done in the years 1933 and 1934. It appears that the assessed valuation of the property in the township had been steadily decreasing and that the rate of tax voted, as above indicated, was not producing enough money to pay the anticipation tax warrants that had issued for each particular year. On September 15, 1934, there still remained due to the contractor the sum of $27,562.55, for which amount six anticipation warrants were issued by the commissioner, five of which were for the sum of $5,000 each, and one for the sum of $2,562.55, as renewals of the anticipation warrants that had theretofore been issued and remained unpaid either *in toto* or in part.

This action was brought by appellees in March, 1935, to enjoin the payment of any money to appellants individually or to any of them as copartners doing business as the Churchill Gravel Company, by reason of the contract as made between the highway commissioner and the Churchill Gravel Company for the improvement of said roads. The position of appellees in this case is that no attempt was made to comply with the provisions of statute regarding the letting of the contract for doing the work in question, and that therefore the same was invalid and the anticipation tax warrants unenforceable against the town. The present outstanding warrants are renewals of former warrants which were issued against the special tax to be collected. The five-year period for which the special tax was voted, had already expired before the issuance and delivery of the anticipation tax warrants which are now outstanding. These warrants appear to be issued and payable out of the general road and bridge fund.

Paragraphs 124 *et seq.*, ch. 121, Cahill's Ill. St. 1933, has to do with the surveys, estimates, plans, bids, notice and opening of bids, with respect to contracts for such work as is under consideration herein. It appears that when the proposition for a levying of the tax has been duly carried, that it shall be the duty of the county superintendent of highways to cause to be surveyed the roads to be improved, and to prepare suitable maps, plans, specifications, and estimates of the cost of the proposed improvement. The work shall be divided into convenient sections, each of which shall be numbered. Upon the completion of the maps, plans, specifications and estimates, the county superintendent of highways shall file one copy thereof with the town clerk wherein the work is to be done, and one copy with the commissioner of highways of such town, and in case of State aid road construction, copies shall be filed with the department of State highways. It is further

provided by ¶ 125 that when such plans and specifications are completed, the commissioner or commissioners, as the case may be, shall advertise for sealed bids for such work, by publishing a notice thereof for at least three weeks, in some newspaper, and also by posting notices in at least 10 of the most public places in the town or road district. Paragraph 127 provides that the commissioners shall appear at the time and place designated, and shall open the bids and let the contract publicly to the lowest responsible bidder or bidders by sections, and that the bidders shall be required to separately state their bids for each class of work in such manner as the commissioners may provide.

It is undisputed that no advertisement for bids was made, no notice posted, and no plans, specifications or estimates filed in the office of the highway commissioner or of the town clerk. It is urged by appellees that there was not a sufficient compliance with the law in the letting of this contract to make the same legal and therefore it was void. In the first instance, the determination of this question must rest with the interpretation of the statute relative to such contracts, that is, whether the provisions of the statute are to be considered mandatory or deemed merely directory.

Appellants rely upon the rule that where the power to do a particular thing exists, that a mere irregular exercise of such power will not permit of the defense of ultra vires where the corporation has received the benefits of the contract, urging that under such circumstances, the municipal corporation will be estopped from setting up such irregular exercise of a given power. In this respect they cite many cases to which we are unable to make any specific reference in this opinion. However, an examination of that line of cases will disclose that they are distinguishable from cases similar to the present one. They recognize the rule

followed therein to be subject to the exception as stated in *McGovern v. City of Chicago,* 281 Ill. 264, at p. 280, "A municipal corporation as against persons who have acted in good faith and parted with value for its benefit, cannot, *unless by virtue of some statutory provision,* set up mere irregularities in the exercise of power conferred. . . ."

It is a general and fundamental principle of law that all persons contracting with municipal or public corporations must at their own peril inquire into the statutory power of its officers to make the contract. In this connection it has been held in this State that commissioners of highways have no powers except such as are conferred by statute, and contractual obligations can be imposed by them on the municipality only so far as they are expressly authorized to incur same or such as are incident to those expressly conferred. *Challacombe v. Central Township Highway Com'rs,* 161 Ill. App. 115, 117; *Euziere v. Rockville Highway Com'r,* 346 Ill. 131, 134; *American Mexican Refining Co. v. Wetzel,* 264 Ill. App. 220. This principle is more strictly applied, and properly so, with respect to the powers of public officers than in the law of private corporations. It is the duty of those dealing with municipal corporations to take notice of limitations on its power to contract, as well as any specific provisions of statute governing the letting of such contracts. One dealing with public officers who derive their powers from statutory enactments are bound to take notice of the law relative to such officers and their power to act. *Ayers v. City of Jacksonville,* 171 Ill. App. 129, 136; *Green v. Mail,* 362 Ill. 518.

A case quite similar to the present one was before this court in that of *Brownell Improvement Co. v. Highway Commissioner,* 280 Ill. App. 43. It was there held that requirements of statutes relating to hardroad construction and contracts let therefor, were manda-

tory and not directory. The contract in this case falls within the above classification and therefore the rule of estoppel urged by appellants against appellees is not available. *Challacombe v. Central Township Highway Com'rs, supra; Rogne v. People,* 224 Ill. 449, 451; *Green v. Mail, supra.*

Where by statute a public officer can only let contracts to the lowest bidder after advertisement, a contract made in violation of such requirements is illegal. Statutes of this character contemplate that the steps adopted by it with reference to the letting of the contract, shall be of such a nature and in such form as to invite competition. In order that persons desiring to bid upon such contracts may do so upon a uniform basis, such statutes invariably provide that plans and specifications for the improvement must be adopted by the body corporate prior to inviting the bids, which plans and specifications are in some way made public so that those desiring to bid may do so in a bona fide manner. Such plans and specifications are essential to competitive bidding, and it is only through their agency that the public has any reasonable assurance that all bidders are competing upon the same basis and without favoritism. By the above method we find that the bidders must submit their bids according to the plans and specifications decided upon by the body corporate, and not upon any scheme or plan of the bidder. Such a course as the latter would leave no definite basis for competitive bidding, as each bidder would have in mind the material and plan for the work to be done, according to his own bid. Therefore when viewed in light of the above, we find the reason for statutes of this character at once apparent, as well as ample cause for a due observance thereof.

The purpose of statutes requiring public letting and competitive bidding such as in this case is for the protection of those who will be called upon to pay for the

work. *Rogne v. People, supra,* p. 452. Such statutes are entirely wholesome in their character and effect. Some of appellants claim to be holders for value, and without notice, of certain of the warrants. Instruments such as anticipation tax warrants, which are drawn upon a particular and specific fund, are not negotiable in character the same as notes. *Morrison v. Austin State Bank,* 213 Ill. 472, 487; *National Bank of Monmouth v. Shunick,* 228 Ill. App. 471, 477.

The decree of the trial court is affirmed.

*Decree affirmed.*