Brownell Improvement Company, Appellant, v. Highway Commissioner of Town of Sumner, Appellee.

Gen. No. 8,908.

44

February term, 1935. Heard in this court at the Opinion filed April 22, 1935.

ALFRED LUBIN, of Chicago, and LUTHER B. BRATTON, of Kankakee, for appellant.

EVA L. MINOR, of Kankakee, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The Brownell Improvement Company started suit in the circuit court of Kankakee county to recover a balance they claimed was due them from the highway commissioner of the Town of Sumner in Kankakee county, Illinois. The declaration of the plaintiff consisted of the common counts. The suit is based upon an alleged contract between the plaintiff and the defendant wherein the defendant was to be furnished crushed stone at the cost of $1.53 per ton, to be used in building a hard road in Kankakee county. The residents of the Town of Sumner had voted a $40,000

bond issue for the purpose of building 15 miles of hard surfaced road in said town.

To the declaration of the plaintiff the defendant filed a plea of the general issue and also two special pleas. The first special plea alleges that the value of the material furnished by the plaintiff was more than $200, and that the defendant did not have the consent or approval of the superintendent of highways to purchase the gravel. The second plea alleges that there was no public advertisement for the purchasing of material in question as provided in the statute.

It is not disputed that the commissioner of highways entered into a contract with the plaintiff to furnish crushed stone to the township for the construction of a road. The agreed price was $1.53 per ton. The plaintiff concedes that the commissioner of highways did not advertise for bids for the purchasing of this stone, and that the county superintendent of highways did not approve of the purchasing of the material in question. The evidence shows that the commissioner of highways asked the county superintendent of roads to approve the contract of the appellant; that the superintendent in turn asked the commissioner if he had advertised for bids; that the commissioner replied that he had not; and the superintendent of roads then told the commissioner it did not look fair to the taxpayers, and that he could not approve the contract.

The first shipment of stone was made July 12, 1927. The appellant was notified by H. M. Gerdes, the township treasurer, by letter dated July 5, 1927, that he would not pay any of the orders issued by the commissioner of highways against Sumner township permanent road fund until the commissioner complied with the law. On July 25, 1927, Mr. Gerdes wrote the appellant another letter in which he stated he would

refuse to pay any orders drawn against the hard road fund until the requirements of the statute regarding the construction of the roads to be built with said fund were fully complied with. He also stated in his letter that the statute had not been complied with. August Radeke was superintendent of highways for the county of Kankakee, and he was never called upon either by the plaintiff or the defendant to draw plans and specifications for the road on which the crushed stone was used. After the stone was delivered the commissioner of highways issued to the plaintiff 35 warrants in all aggregating $4,463.16. Each and every one of the warrants was for an amount of approximately $199. None exceeded that amount. The case was tried before the court without a jury. The court found the issues for the defendant and entered judgment against the plaintiff for the costs of suit. The case is brought to this court on appeal.

The theory on which the plaintiff tried the case and on which it is now asking a reversal of the trial court is set forth in its brief as follows: "That at the time of the execution of the contract in question, the statute did not require a written approval of the county superintendent of highways and therefore, the knowledge and acquiescence by Radeke, the county superintendent of highways, of O'Neill's contractual relationship with the plaintiff, without voicing any objection, together with all other circumstances in the matter, constitute an approval within the purview of the statute then in force. That the section of the statute requiring the township highway commissioner to publicly advertise for bids for the construction of a road only has application to the case where the entire construction under the bond issue, or the entire construction of one section under the bond issue is made to a general contractor and not where the county superintendent of highways permits and authorizes

the township highway commissioner to purchase material, hire all the labor and personally supervise the construction of such road. That the statute requires the county superintendent of highways to prepare plans, specifications and estimates and submit them to the township highway commissioner, and therefore, the defendant is estopped from setting up a defense that there was no publication for bids where such county superintendent has neglected to furnish said highway commissioner with plans, specifications and estimates. That the statute placing a limitation on the extent to which a township highway commissioner may contract is directory and not mandatory, and the township highway commissioner is estopped from setting up as a defense an alleged irregular exercise of his power to contract, when called upon to pay for the materials sold and delivered in good faith by the plaintiff and accepted and used by the defendant.''

The theory of the defendant is set forth in its special pleas. Sections 115, 116 and 118 of the Roads and Bridges Act, Cahill's St. ch. 121, ¶¶ 124, 125, 127, are as follows: ''Whenever it shall be voted to construct gravel, rock, macadam or other hard roads or to improve dirt or earth roads and to oil treat the same or to oil treat roads in any township or district it shall be the duty of the county superintendent of highways of the county in which said township so voting is located to at once survey (or caused to be surveyed) the route of the road thus to be improved and to prepare suitable maps, plans, specifications, and estimates of the cost of the proposed improvement. The county superintendent of highways shall divide the same into convenient sections, each of which shall be numbered. The county superintendent of highways, upon the completion of said maps, plans, specifications and estimates, shall file one copy of the same with the town or district clerk of the township wherein the pro-

posed road is to be constructed and one copy with the commissioners of highways of said township, and in case of State aid road construction or improvement the county superintendent of highways shall also file copies of such maps, plans, specifications and estimates with the State Highway Commissioners." "When the plans and specifications are completed, the commissioners shall advertise for sealed bids for said work, by publishing a notice thereof for at least three weeks in some newspaper published in said township or road district. If there is no newspaper published therein, then the newspaper published nearest said township or road district, and also by posting notices in at least ten of the most public places in said town or road district." "The commissioners shall appear at the time and place appointed, for the purpose of opening the bids and shall proceed to let the contract publicly to the lowest responsible bidder or bidders by sections, with proper specifications of the various kind of labor or material on each section, and bidders shall be required to separately state their bids for each class of work in such manner as the commissioners may provide, and each contractor shall be required to give bond with good and sufficient sureties for the performance of his contract, payable to the commissioners for the use and benefit of the town or district with the necessary specifications and stipulations on the part of the contractor entered therein: *Provided, however,* no contract in excess of the sum of two hundred dollars ($200.00) shall be let by the commissioners of highways in any town or district without the approval of the county superintendent of highways. No commissioner shall be interested either directly or indirectly in any contract relating in any manner to said road."

We think the clear intention of the legislature in passing the aforesaid sections of the statute is mandatory in its provisions and the contract to be en-

forceable must be in conformity with the provisions of this statute. Highway commissioners have no powers except those conferred by the statute and they can perform no acts, nor impose any burdens upon their townships except those plainly authorized by the statute. When they undertake to perform any act which the statute does not say they may do, that act will be void. *People ex rel. Road Dist. No. 5 v. Hedges,* 289 Ill. 378; *Ohio & M. Ry. Co. v. People,* 123 Ill. 648. We are of the opinion that the commissioner of highways had no authority to enter into the alleged contract to purchase the stone without first having the contract approved by the county superintendent of highways, and publicly advertising for sealed bids.

That part of section 118 of the Roads and Bridges Act, Cahill's St. ch. 121, ¶ 127, which provides that no contract in excess of $200 shall be let by the commissioner of highways in any town or district without the approval of the county superintendent of highways, is mandatory. The commissioner of highways has no authority to enter into a contract for purchasing material costing more than $200 unless he complies strictly with the statute. Evidently the commissioner of highways and the plaintiff had this section in mind when the road commissioner issued 35 vouchers, each for an amount less than $200 payable to the plaintiff. This was a mere makeshift to avoid the effect of the statute. The law will not permit a commissioner to do something indirectly that he is not permitted to do directly. *Wells v. People,* 71 Ill. 532.

Appellant contends that if it is within the power of the highway commissioner to make the contract, and it has been performed in good faith by the plaintiff, and the highway commissioner has accepted the benefits of the materials so delivered, a violation of any limitation is a mere irregularity and the town cannot rely upon such irregularities to avoid payment; that where such contracts are made by a township highway

commissioner, he is estopped from setting up the irregular exercise of the power when called upon to pay for what he has received. The appellee does not seriously contend that this proposition of law is not correct. It insists that the highway commissioner had no power to enter into such a contract as he did with the appellant because the statutory provisions governing such contracts were not complied with. In the case of *Challacombe v. Highway Com'rs*, 161 Ill. App. 115, the commissioners had let a contract for the construction of a bridge, and had not complied with the statutory requirements in advertising for bids. The court in discussing the necessity for a strict compliance with the statute use this language: "Where the charter or incorporating act requires the officers of the city to award contracts to the lowest bidder a contract made in violation of its requirements is illegal, and in an action brought on such contract for the work the city may plead its illegality in defense. It is argued the failure to advertise for bidders as required by the statute is an irregularity, and that the public having used and enjoyed the bridge, the town should pay for what it would have had to pay had it been gotten in the right way; that after receiving the benefit it should be estopped from denying the validity of the contract. The commissioners of highways have no power to contract for the building of bridges except the power conferred by the statute, and they have no power to contract in any manner other than is provided by the statute."

The appellant has cited numerous cases in which the doctrine is applied that when the commissioners have exercised their power in an irregular way and the township has received the benefit of the contract and material furnished, the doctrine of estoppel should be applied by the court. This is no doubt a correct statement of the law and the cases support appellant's contention, but in the case we are now considering the

commissioner did not exercise his power in an irregular way, but he attempted to enter into a contract that the statute did not give him authority to make, and, therefore, the contract was void and unenforceable. In the case of *Dement v. Rokker*, 126 Ill. 174, our Supreme Court, in discussing the presumption of the legality of contracts, use this language: "There is a distinction between contracts where the parties have an inherent right to contract, and contracts where there is no inherent power to contract, but the contract is purely by virtue of a special statutory authority. In the former, the contract is presumed to be lawful, and it devolves upon those who deny its validity to show that it is unlawful; while in the latter instance the reverse is true. The burden rests upon those seeking to enforce it, to show that the contract is within the statutory authority."

The appellant argues that the defendant cannot set up as a defense that there was no publication for bids, because the county superintendent of highways neglected to prepare and furnish plans, specifications and estimates of the road to be constructed, to the town commissioner of highways. In its printed argument as sustaining this proposition, it quotes the statute relative to approval of the county superintendent of highways of the road jobs costing more than $200. Certainly the appellant had numerous opportunities to ascertain whether or not the county superintendent of highways had prepared plans and specifications for this road work before it entered into a contract to furnish the crushed stone to the township. The appellant in furnishing material without ascertaining these facts acted at its own peril, and is barred from pleading that the township cannot defend the action on the ground that the county superintendent of highways has neglected to prepare plans, specifications and estimates of the road to be constructed.

It is our opinion that the trial court properly found that there was no valid existing contract between the plaintiff and the defendant, and that the plaintiff has no cause of action against the defendant. The judgment of the circuit court of Kankakee county is hereby affirmed.

*Judgment affirmed.*